ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **BLANCA I. GONZÁLEZ MORENO**<br><br>Recurrida<br><br>v.<br><br>**DEPARTAMENTO DE JUSTICIA**<br><br>Patrono<br><br>**CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO**<br><br>Recurrente - Asegurador | KLRA202400351 | **REVISIÓN** procedente de la **Comisión Industrial de Puerto Rico**<br><br>Caso Núm. C.I.: **94-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-02**<br><br>Caso C.F.S.E.: **92-71-00593-2**<br><br>Sobre: Conferencia con Antelación a Vista |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 5 de septiembre de 2024.

Comparece ante nos el Administrador de la Corporación del Fondo del Seguro del Estado (Administrador o Recurrente) y, mediante *Solicitud de Revisión,* nos solicita que revoquemos la *Resolución de Vista Pública* (*Resolución*)[1] emitida por la Comisión Industrial de Puerto Rico (Comisión o Recurrido). Mediante dicha determinación, la Comisión revocó la decisión del Administrador del 2 de octubre de 2023, así ordenándole a la Corporación del Fondo del Seguro del Estado (Fondo) a realizar el pago retroactivo de los doce (12) meses a tenor con el Artículo 3 (d) de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, 11 LPRA sec. 3 (Ley Núm. 45) a favor de la dependiente de la señora Blanca I. González Moreno.

---

[1] Apéndice de *Solicitud de Revisión,* Anejo I, págs. 1-4. Notificada y archivada en autos el 29 de febrero de 2024.

Por las razones que discutiremos a continuación, revocamos la *Resolución* recurrida.

**I.**

Para el 18 de octubre de 1989, la señora Blanca I. González Moreno (Sra. González Moreno u Obrera) trabajaba como Técnica II en el Registro de la Propiedad de Utuado, dependencia del Departamento de Justicia.[2] En aquella fecha, la Sra. González Moreno alegó que "mientras estaba revisando la labor de inscripción de documentos, sintió fuerte dolor en los músculos del cuello y espalda".[3] Por aquella lesión, el 31 de julio de 1991, y posteriormente el 12 de enero de 2001, el Fondo le aprobó una compensación por incapacidad parcial permanente.[4]

El 16 de abril de 1992, reportó haber sufrido otra lesión mientras laboraba. En esta ocasión, presentó un *Informe Patronal* ante el Fondo del Seguro del Estado, en el que alegó haber sufrido de fuerte dolor en el brazo derecho, área cervical, cuello y en la parte alta de la espalda.[5] El 22 de febrero de 1995, recibió una compensación del Fondo por esta lesión.[6]

Tras varios trámites relacionados con estas lesiones y las compensaciones autorizadas por el Fondo, el 10 de septiembre de 2012, el Fondo notificó una determinación en donde denegó una incapacidad total a la Obrera por factores socioeconómicos.[7] Dicha determinación fue apelada oportunamente ante la Comisión y el 24 de junio de 2019, esta revocó la *Resolución* de 10 de septiembre de 2012. En consecuencia, la Comisión le reconoció a la Sra. González Moreno una incapacidad total permanente por factores socioeconómicos y le ordenó al Fondo a realizar los pagos de la

---

[2] *Íd.*, Anejo XVIII, pág. 51.
[3] *Íd.*
[4] *Íd.*, Anejos XVII y XVIII, págs. 50-51.
[5] *Íd.*, Anejo XIX, pág. 52.
[6] *Íd.*, Anejo XVI, pág. 49.
[7] *Íd.*, Anejo XII, págs. 41-42.

compensación reconocida por la Ley Núm. 45, *supra*.[8] **El Fondo no apeló aquella determinación**.

Ante aquella determinación, el 3 de julio de 2019, el Fondo determinó que la Sra. González Moreno tenía "derecho a una compensación por vida pagadera, en plazos mensuales mientras dure la incapacidad".[9] Añade la determinación que "[d]e los pagos mensuales que por la presente se ordenan y en los casos en que proceda, se deducirá proporcionalmente la suma que se le haya pagado por cualquier otro concepto".[10] Finalmente, dispone que la Sra. González Moreno podría solicitarle al Administrador que le permita hacer una inversión provechosa según dispone el Artículo 3 (d) de la Ley Núm. 45, así renunciando a la pensión vitalicia.[11]

El 20 de noviembre de 2022, la Sra. González Moreno falleció y el Administrador identificó como beneficiario cualificado al señor Enrique Gallego Maldonado (Sr. Gallego Maldonado), viudo de la Sra. González Moreno. Según la *Certificación de Balances de Incapacidades*, fechada el 9 de marzo de 2023, el Fondo le había autorizado una compensación por incapacidad total permanente de $24,300.00.[12] Surge que de esa cantidad, el Fondo procedió a descontarle $21,332.60 conforme lo dispuesto en el Artículo 3 (d) de la Ley Núm. 45 en concepto de pagos ya realizados e inversiones autorizadas.[13] El 2 de octubre de 2023, el Administrador emitió una *Decisión* en la que dispuso sobre el dinero remanente.[14] Luego de los descuentos, restaba un remanente de $2,967.40 a ser distribuido al Sr. Gallego Maldonado, que se pagaría en pagos mensuales de $200.00, retroactivos a la muerte de la Obrera, hasta alcanzar la

---

[8] *Íd.*, Anejo XI, págs. 35-40.
[9] *Íd.*, Anejo X, pág. 34.
[10] *Íd.*
[11] *Íd.*
[12] *Íd.*, Anejo IX, pág. 33.
[13] *Íd.*
[14] *Íd.*, Anejo VIII, págs. 31-32.

totalidad del remanente.[15] Además, dispuso que al fallecimiento de la Sra. González Moreno haber ocurrido más de tres (3) años desde la fecha del accidente, "caducó todo derecho que como caso de muerte pudiera tener".[16]

El 31 de octubre de 2023, el Sr. Gallego Maldonado presentó una *Apelación de Decisión del Administrador del Fondo del Seguro del Estado* ante la Comisión.[17] Mediante este escrito, arguyó que el Fondo nunca le hizo el pago correspondiente al Artículo 3 (d) de la Ley Núm. 45. Particularmente, señaló que la pensión a la cual la Sra. González Moreno tenía derecho "se pagará retroactivo a la fecha del accidente, pero el pago retroactivo nunca excederá de doce (12) meses" y alegó que el Fondo nunca cumplió con este pagó ni tenía intención de hacerlo.[18]

El 24 de enero de 2024, la Comisión celebró una vista pública a la que comparecieron las partes. A base de esta vista, el 29 de febrero de 2024, el oficial examinador de la Comisión presentó su *Informe*.[19] Dicho *Informe* recomendó revocar al Administrador al entender que la Ley Núm. 45 no distingue entre dos (2) incapacidades totales diferentes.[20] Ese mismo día, la Comisión acogió el *Informe* y revocó al Administrador.

El 19 de marzo de 2024, el Administrador presentó una *Moción de Reconsideración*,[21] a la que se opuso el Sr. Gallego Maldonado.[22] El 6 junio de 2024, la Comisión denegó la *Moción de Reconsideración*.[23] Inconforme, el 3 de julio de 2024, el Administrador presentó la *Solicitud de Revisión* ante nuestra

---

[15] *Íd.*, pág. 31.
[16] *Íd.*
[17] *Íd.*, Anejo VII, pág. 30.
[18] *Íd.*
[19] *Íd.*, Anejo I, págs. 3-4.
[20] *Íd.*
[21] *Íd.*, Anejo II, págs. 5-11.
[22] *Íd.*, Anejo IV, págs. 13-16.
[23] *Íd.*, Anejo VI, págs. 26-29.

consideración. En dicha comparecencia, hizo los siguientes señalamientos de error:

> **1. LA COMISIÓN INDUSTRIAL COMETIÓ ERROR DE DERECHO AL REVOCAR LA DECISIÓN DE DEPENDENCIA NOTIFICADA POR EL ASEGURADOR EL 2 DE OCTUBRE DE 2023, CUANDO DICHA DETERMINACIÓN NO SE ENCUENTRA SUSTENTADA POR SUS CONCLUSIONES DE DERECHO.**
>
> **2. LA COMISIÓN INDUSTRIAL COMETIÓ ERROR DE DERECHO AL REVOCAR LA DECISIÓN DE DEPENDENCIA NOTIFICADA POR EL ASEGURADOR EL 2 DE OCTUBRE DE 2023, SIENDO DICHA DETERMINACIÓN CONTRARIA AL ARTÍCULO 3 INCISO D-3 DE LA LEY 45 DEL 18 DE ABRIL DE 1935, SEGÚN ENMENDADA, CONOCIDA POR LEY DE COMPENSACIONES POR ACCIDENTES DEL TRABAJO, 11 L.P.R.A §1 Y SS.**

## II.

### A.

El Artículo 4.006 (c) de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, (4 LPRA sec. 24y (c)), faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. Los organismos administrativos merecen la mayor deferencia judicial, puesto que estos tienen el conocimiento especializado sobre los asuntos que les han sido delegados. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012). Al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Íd.* Todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo cual la parte que las impugne debe producir suficiente evidencia para derrotarla. *Íd.*

Las facultades adjudicativas de una agencia están regidas por la LPAU, *supra*, y por la jurisprudencia aplicable. La Sección 3.1 de la LPAU, *Íd.*, requiere que las agencias fundamenten sus resoluciones con determinaciones de hecho y conclusiones de

derecho. Estas determinaciones deben reflejar que se consideraron y resolvieron los conflictos de prueba y, además, deben describir tanto los hechos probados como los rechazados. *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 265 (2007). Por lo tanto, la facultad revisora de los tribunales está limitada a determinar: (1) que el remedio concedido por la agencia fuese el apropiado; (2) si las determinaciones de hecho estuvieron basadas en evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta. LPAU, *supra*, Sec. 4.5.

Sobre nuestra facultad revisora, el Tribunal Supremo ha expresado que:

> **[L]as determinaciones de hecho se deben sostener si se fundamentan en evidencia sustancial que surja de la totalidad del expediente administrativo**. Mientras, la deferencia antes mencionada **no se extiende de manera automática a las conclusiones de derecho** emitidas por la agencia, ya que estas serán revisables en todos sus aspectos por el tribunal. **Esto es, que el tribunal las puede revisar sin sujeción a norma o criterio alguno**.
>
> *Hernández Feliciano v. Mun. Quebradillas, supra*, pág. 115. (citas omitidas) (Énfasis nuestro).

"[L]os foros apelativos debemos diferenciar entre asuntos de interpretación estatutaria, en la que los tribunales son especialistas, y los asuntos propios de la discreción o la pericia administrativa". *Íd.*, pág. 116. Al revisar las determinaciones de hechos, los tribunales solo pueden sustituir su criterio por el de la agencia cuando las determinaciones no están fundamentadas en evidencia sustancial. "Evidencia sustancial es 'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión'". *Empresas Ferrer v. A.R.Pe.*, *supra*, pág. 266 (citando a *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 615 (2006)). La parte que impugne una determinación "tiene que convencer al tribunal de que la evidencia en la cual se apoyó la

agencia para formular tales determinaciones no es sustancial". *Otero v. Toyota*, 163 DPR 716, 728 (2005).

Los tribunales le deben menor deferencia a las conclusiones de derecho de las agencias. *Hernández Feliciano v. Mun. Quebradillas*, *supra*, pág. 115. Aun así, la interpretación judicial del derecho no constituye una sustitución automática de las conclusiones de derechos de una agencia. *Íd*. En otras palabras, la deferencia disminuida no trata de una revisión *de novo*. El criterio administrativo solo debe ser descartado cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

## B.

La Carta de Derechos de nuestra Constitución dispone que "[s]e reconoce el derecho de todo trabajador [...] a protección contra riesgos para su salud o integridad personal en su trabajo o empleo [...]". Artículo II, Sección 16, Const. ELA [Const. PR], LPRA, Tomo I. No obstante la disposición constitucional, la política pública a favor del bienestar del obrero ha sido reconocida y salvaguardada desde antes de la aprobación de nuestra Carta de Derechos. El 18 de junio de 1935, el Gobierno de Puerto Rico aprobó la Ley Núm. 45, *supra*. Esta Ley constituye:

> [U]na legislación de carácter remedial que brinda ciertas garantías y beneficios al obrero en el contexto de accidentes o enfermedades ocupacionales que ocurren en el escenario del trabajo. Dicho estatuto establece un sistema de seguro compulsorio y exclusivo para compensar a los obreros que sufran lesiones o enfermedades en el curso del empleo, brindándoles un remedio rápido, eficiente y libre de las complejidades de una reclamación ordinaria en daños.
>
> *Hernández Morales et al. v. C.F.S.E.*, 183 DPR 232, 240 (2011).

La compensación que provee la Ley Núm. 45, *supra*, depende en parte de la categoría y del grado de incapacidad. Entiéndase que

la Ley Núm. 45 contempla varias categorías de incapacidad, incluyendo la incapacidad total permanente o temporera, la incapacidad parcial permanente o temporera, y las lesiones causadas por accidente laborales y por factores socioeconómicos. Además, la Ley contempla varias ocasiones en las que proceden descuentos de las cuantías otorgadas como compensación y dispone de un tope. Al momento de adjudicarse las compensaciones por las lesiones ocurridas entre el 1989 y 1992, el Artículo 3 (d) de la Ley Núm. 45 disponía que el tope para la compensación por una incapacidad total permanente era $24,300.00.[24]

Por otro lado, el Artículo 3, sub-inciso d-3, de la Ley Núm. 45 dispone las situaciones en las que procede o no el descuento de incapacidades preexistentes. Este dispone que:

> En todos aquellos casos en que un obrero, por efecto de un accidente del trabajo, sufriera la agravación o aumento de una incapacidad anterior no proveniente de un accidente del trabajo, la incapacidad resultante del accidente le será compensada incluyendo la incapacidad anterior; pero en aquellos casos en que un obrero sufriera la agravación o aumento de una incapacidad preexistente causada por un accidente anterior y por la cual cobró la compensación correspondiente, se le descontará de la compensación a que tenga derecho por la incapacidad global resultante, el montante de la compensación que recibió por su incapacidad preexistente; Disponiéndose, que en todos aquellos casos en que un obrero sufra la agravación o aumento de una incapacidad preexistente y dicha agravación o aumento resultare en la pérdida total y permanente del miembro u órgano afectado o resultare en la pérdida total y permanente de las funciones fisiológicas generales, el obrero será compensado por la incapacidad total sin tomar en consideración la incapacidad preexistente aun cuando haya cobrado compensación por ésta; y, disponiéndose, además, que el coste adicional que resultare de la aplicación de la presente disposición se pagará con cargo al Fondo de Reserva para catástrofes y no se tomará en consideración para los fines del Plan de Clasificaciones basado en la Experiencia (Merit Rating System ) que más adelante se provee.

---

[24] Esta cantidad fue enmendada y aumentada a $32,400.00 por la Ley Núm. 257-2004. Según la Sección 3 de la Ley Núm. 257-2004, dicho aumento al tope será de aplicación a todo obrero o empleado que sufra un accidente del trabajo o enfermedad ocupacional que ocurra a partir del 1 de julio de 2004 día en que inició la vigencia de esta Ley. Los incidentes en el caso de autos ocurrieron antes de aquella fecha.

Las incapacidades que contempla el Artículo 3, sub-inciso d-3, son aquellas ocasionadas por una lesión en el trabajo. Por lo tanto, no contempla aquellas incapacidades totales declaradas por virtud de factores socioeconómicos. Entiéndanse factores económicos como aquellos no relacionados con una lesión en el empleo, sino son factores "como lo son la edad, escolaridad, sexo y las oportunidades de empleo" que le impiden al obrero a obtener un empleo que le produzca ingresos en forma ordinaria y de manera estable. *Memorial Explicativo, Reglamento Sobre Factores Socio-Económicos, Reglamento Núm. 3470, Corporación del Fondo del Seguro del Estado*, 12 de junio de 1987 (Reglamento Sobre Factores Socioeconómicos). La Sección II (7) del Reglamento Sobre Factores Socioeconómicos define los factores socioeconómicos como:

> Aquellos factores que gravitan para facilitar u obstaculizar el que un obrero pueda ganarse el sustento propio y el de su familia en forma ordinaria y de manera estable. Se considerarán los siguientes factores: **el impedimento físico y/o mental del trabajador y su extensión, medido y expresado desde el punto de vista médico en términos de pérdida de las funciones fisiológicas generales y el efecto de ese impedimento físico y/o mental sobre la habilidad del obrero o trabajador para realizar un empleo remunerativo en forma ordinaria y de manera estable, la edad, escolaridad, sexo y las destrezas del obrero**.

> *Íd*. (Énfasis nuestro).

Una determinación de incapacidad total por factores socioeconómicos no está contemplada por el Artículo 3, sub-inciso d-3 de la Ley Núm. 45, *supra*, como una de las razones en las que no procede el descuento de las compensaciones por incapacidades preexistentes.

## III.

Por estar íntimamente relacionados, consideraremos los errores señalados en conjunto.

Como cuestión de umbral, no existe duda, ni está en controversia el hecho de que mediante la *Resolución* emitida el 25

de enero de 2019, y notificada el 28 de febrero de 2019, la Comisión declaró la **incapacidad total permanente por factores socioeconómicos** de la Sra. González Moreno. Esta determinación no fue apelada. El 20 de noviembre de 2022, falleció la Sra. González Moreno y el 2 de octubre de 2023, el Administrador le envió una determinación notificándole al Sr. Gallego Maldonado que era beneficiario de la compensación a la que tenía derecho la Sra. González Moreno. Dicha determinación le notificó al Sr. Gallego Maldonado que tenía derecho a recobrar el remanente de los $24,300.00 que le otorgó el Fondo a la Sra. González Moreno por las lesiones que sufrió en el 1992, mientras fungía como Técnica II en el Registro de la Propiedad de Utuado. Según la *Certificación de Balance de Incapacidades*, de los $24,300.00 que le había concedido el Fondo, la Sra. González Moreno había cobrado $21,332.60, por lo que el remanente al cual tenía derecho el Sr. Gallego Maldonado era $2,967.40.

Como hemos señalado, el Artículo 3, sub-inciso d-3 de la Ley Núm. 45 dispone aquellas circunstancias en las cuales no procede descontarse las compensaciones por incapacidades preexistentes. Estas circunstancias surgen cuando la incapacidad total permanente de la trabajadora está causada por un accidente que haya ocurrido en el trabajo que agrave o aumente la incapacidad ya establecida. En el caso de autos, el Administrador ya le había declarado una incapacidad parcial permanente a la Sra. González Moreno. En el 2019, la Comisión le reconoció una incapacidad total permanente por factores socioeconómicos. Es decir, la incapacidad total declarada **no fue producto de un accidente o lesión sufrido en el trabajo, sino por factores externos no causados por su empleo**. En consecuencia, proceden los descuentos por las incapacidades preexistentes ya pagadas.

En cuanto al pago retroactivo de doce (12) meses a tenor con el Artículo 3 de la Ley Núm. 45, estamos de acuerdo con la postura del Administrador. La determinación del 2 de octubre de 2023, revocada por la Comisión, era una determinación reconociendo al Sr. Gallego Maldonado como el beneficiario de la Sra. González Moreno. La misma ordenó el pago del remanente de la compensación a favor del beneficiario. El pago retroactivo no fue objeto de aquella determinación, por lo que la Comisión actuó sin jurisdicción para ordenar que se pagara.

En resumen, se cometieron los errores señalados. Revocamos la determinación de la Comisión por ser contraria a derecho y por haber actuado sin jurisdicción.

**IV.**

Por los fundamentos discutidos, revocamos la *Resolución* de la Comisión Industrial de Puerto Rico.

Lo acordó el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones